STATE EX REL. PROGRESSIVE ASSURANCE COMPANY, Respondent, vs. FREEDY, Commissioner of Insurance, Appellant.

*May 13—June 12, 1931.*

For the appellant there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

For the respondent there was a brief by *Sauthoff & Hansen* of Madison, and oral argument by *Harry Sauthoff.*

FOWLER, J. The relator, hereinafter referred to as the "company," is a health and accident insurance company and brought this proceeding in *mandamus* to compel the defendant to furnish it annual statement blanks on which to make an annual report to the insurance department for the year 1929–1930. The court granted a peremptory writ in terms as prayed.

The statutes cited by the respondent as imposing upon the commissioner the duty to do as commanded by the peremptory writ are: sec. 201.40 (1), which provides for issuing a license to any company "applying for a license or re-license, to expire on March 1st after date, to be annually

renewed unless sooner revoked;" sec. 201.50, which provides that annual statements shall be filed by insurance companies not later than March 1st each year, makes it the duty of the commissioner to prepare forms for such statements "for the various forms, kinds and classes of insurance companies authorized to do business in this state" and to furnish such blanks to each company doing business in the state, and provides that no license shall be renewed until such statement is filed; sec. 200.11 (1) and (2), which provide that the commissioner shall give notice to an insurance company of any order affecting it that he makes, and that a company may have a "rehearing" on any order within ten days unless the company shall request otherwise.

The company's last license to transact business in Wisconsin expired March 1, 1929. In July, 1929, the commissioner wrote the company a letter, which the parties treat as an order, notifying it that for reasons stated therein its license to do business would not be renewed. The company promptly demanded a "rehearing" and the commissioner promptly notified the company that its rehearing would be had before the last of the following week and requested that the company confer with the commissioner to fix the date. It was then agreed between the commissioner and the company that the hearing should be postponed, but no date was fixed. Neither party thereafter moved in the matter of a rehearing and none was ever had. The commissioner regularly sends out to licensed companies in February annual statement blanks, but sent none to the relator. In February, 1930, the company requested of the commissioner blanks on which to make out a report for the year 1929–1930, which the commissioner refused to do on the ground that it was not required to furnish such blanks to companies not licensed. The company then commenced the instant proceeding.

We are of opinion that the commissioner was not required to furnish the blanks. Sec. 201.50 provides for

insurance companies filing with the commissioner of insurance annual statements and makes it the duty of the commissioner to prepare blank forms therefor and to furnish such blanks to companies doing business in the state. But this manifestly means that such blanks shall be furnished to companies who are lawfully doing business in the state; to companies who are licensed to do business in the state. The statute does not provide that an application for a rehearing shall stay the operation of an order or ruling of the commissioner. It was manifestly the purpose of the provision for prompt rehearing to discommode a company as little as possible in case of revocation on rehearing of an order affecting it, and the promptness of the rehearing was doubtless contemplated as rendering unnecessary provision for a stay. The company's license and right to do business in the state terminated at the date of the commissioner's refusal to renew its license, even if it should be considered that it had right to do business in the state up to that time. Thus the company's 1929 license was inoperative at the time it applied for the blanks, it was not lawfully doing business in the state at that time, and the commissioner was under no duty to comply with its request. It may be further observed that to compel the commissioner by *mandamus* to furnish the blanks would be an empty gesture. This could confer no rights upon the company. The only thing that would avail the company would be a license to do business in the state, which it could only get upon a new application or upon an adjudication that the commissioner's refusal to renew its license was unlawful and that it was consequently entitled to a renewal. The application for the instant writ was wrongly conceived.

*By the Court.*—The order of the circuit court is reversed, with directions to enter judgment dismissing the proceedings.